# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### Abingdon Division

UNITED STATES OF AMERICA

v.

DERRICK LAMONT EVANS, et al.,

    Defendants

**REPORT AND RECOMMENDATION**
Criminal Number:
1:08cr00024-006

    This matter is before the undersigned on Defendant Charles Jermaine King Jr.'s Motion To Dismiss Indictment For Violation Of The Interstate Agreement On Detainers, (Docket Item No. 585) ("Motion"). Based on the reasons set forth below, I find that a violation of King's rights under the Interstate Agreement On Detainers has occurred. I further find that this violation requires that the charge pending against him in this court be dismissed. Based on the facts and circumstances of this case, I recommend that this charge be dismissed without prejudice.

### I. Facts

    The relevant facts in this case are not in dispute, and neither party has requested to present evidence on the Motion. On April 21, 2008, the government filed a criminal complaint alleging that King and 50 other individuals were involved in a conspiracy to distribute cocaine base or "crack" and cocaine in the Bristol, Virginia, area between January 2003 and April 2008, ("Criminal Complaint"). An arrest warrant was issued for King on April 22, 2008. On the face of the warrant, it stated that the

warrant was to be filed as a detainer with the "Bristol City Jail." The government concedes that King was sentenced in the Circuit Court for the City of Bristol, Virginia, to 20 years' imprisonment, with 17 years and 1 month of that term suspended, and he was remanded to the custody of the Sheriff of the City of Bristol on March 14, 2008. The court has no knowledge as to whether the April 22 arrest warrant was ever filed as a detainer against the defendant with the Bristol City Jail.

On May 12, 2008, this court issued a Petition For Writ Of Habeas Corpus Ad Prosequendum to the Bristol, Virginia, City Jail to surrender King to the United States Marshals Service for transport to court for an initial appearance on May 19, 2008. The Marshals Service produced King for his initial appearance before this court on May 19. By Order dated May 19, 2008, the undersigned ordered that King be detained pending trial and remanded to the custody of the Marshals Service based on the fact that he was "currently serving an active state court sentence." Despite this Order, the government now concedes that the Marshals Service returned King to the custody of the Bristol City Jail after his court appearance on May 19.

On May 28, 2008, a grand jury returned an indictment charging King and the 50 other individuals named in the Criminal Complaint with conspiracy to distribute crack and cocaine, ("Indictment). The government concedes that, as a result of the Indictment, the Marshals Service filed a detainer against King with the Bristol City Jail on May 29, 2008.

On June 10, 2008, the court issued a Petition For Writ Of Habeas Corpus Ad Prosequendum to the Bristol City Jail to surrender King to the Marshals Service for

transport to the court for an arraignment on June 16, 2008. It appears that King's arraignment was rescheduled for June 23, 2008. Nonetheless, the return of the June 10 writ, filed by the Marshals Service on June 20, 2008, shows that the Marshals Service assumed custody of King on June 16, 2008, and that King was returned to state custody the same day. It was not indicated on the return whether King was a sentenced state prisoner, despite there being a place on which to indicate such. On June 12, 2008, the court issued another Petition For Writ Of Habeas Corpus Ad Prosequendum to the Bristol City Jail to surrender King to the Marshals Service for transport to the court for his arraignment on June 23, 2008. The Marshals Service produced King for his arraignment as scheduled on June 23. The government also concedes that the Marshals Service returned King to the custody of the Bristol City Jail after his arraignment on June 23. A return of the June 12 writ, filed by the Marshals Service on July 18, 2008, shows that the Marshals Service assumed custody of King on June 23, 2008, but it does not state when King was returned to state custody. (Docket Item No. 477.) The return indicated that King was a sentenced state prisoner. Moreover, despite the fact that the Marshals Service routinely houses federal prisoners at the Bristol City Jail, the government does not contend that King was being held in federal custody after his return June 16 to the Jail.

On August 13, 2008, King's counsel filed the Motion seeking dismissal of the charge against King based on the violation of King's rights under the Interstate Agreement on Detainers.

-3-

## II. Analysis

The Interstate Agreement on Detainers Act, ("Agreement"), was enacted into federal law in 1970 and has been adopted or enacted in 48 of the 50 states, including Virginia. *See* 18 U.S.C.A. App. 2 (West 2000); VA. CODE ANN. § 53.1-210 et seq. (2005 Repl. Vol.). The stated purpose of the Agreement is "to encourage the expeditious and orderly disposition of [pending] charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints" filed against prisoners. 18 U.S.C.A. App. 2, § 2, Art. I (West 2000); VA. CODE ANN. §53.1-210, Art. I (2005 Repl. Vol.). The legislative history reflects two important goals to be accomplished by the clearing of pending charges. The first is "to permit the prisoner to secure a greater degree of certainty as to his future and to enable the prison authorities to plan more effectively for his rehabilitation and return to society." S. REP. NO. 91-1356 (1970) *as reprinted in* 1970 U.S.C.C.A.N. 4864, 4865. In particular, it was noted that prisoners against whom detainers had been filed were often denied access to certain prison rehabilitation programs or privileges. *See United States v. Mauro*, 436 U.S. 340, 359-60 (1978). The second goal is to "provide[] a method whereby prosecuting authorities may secure prisoners serving sentences in other jurisdictions for trial before the expiration of their sentences and before the passage of time has dulled the memory or made witnesses unavailable." 1970 U.S.C.C.A.N. at 4865.

The Agreement applies only when a detainer has been filed by one party state against "a person [who] has entered upon a term of imprisonment in a penal or correctional institution" of another party state. 18 U.S.C.A. App. 2, § 2, Art. III (West

2000); VA. CODE ANN. §53.1-210, Art. III (2005 Repl. Vol.). While the Agreement does not define the term "detainer," the legislative history reflects that a detainer is simply "a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." 1970 U.S.C.C.A.N. at 4865; *see also Mauro*, 436 at 359. The Agreement does not define the term "penal or correctional institution."

Under the section known as the "anti-shuttling provision" of the Agreement, once a detainer is filed against a prisoner in one jurisdiction, (the "sending state"), and the jurisdiction filing the detainer, (the "receiving state"), obtains custody of the prisoner, the charges against the prisoner must be disposed of in the receiving state before the prisoner is returned to the sending state. Under this provision, if the prisoner is returned to the sending state before the receiving state disposes of the charges, the charges in the receiving state must be dismissed. *See* 18 U.S.C.A. App. 2, § 2, Art. IV(e) (West 2000); VA. CODE ANN. §53.1-210, Art. IV(e) (2005 Repl. Vol.). The Agreement as originally enacted by the federal government, and as adopted by Virginia, states that dismissal of the charges should be with prejudice. *See* 18 U.S.C.A. App. 2, § 2, Art. IV(e); VA. CODE ANN. §53.1-210, Art. IV(e). In 1988, however, federal law was amended to state that in any case where the federal government was the receiving state such a dismissal "may be with or without prejudice." 18 U.S.C.A. App. 2, § 9 (West 2000). This section further states: "In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: The seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the

-5-

administration of justice...." 18 U.S.C.A. App. 2, § 9(1) (West 2000).

In this case, the government admits that the Marshals Service filed a detainer against King with the Bristol City Jail on May 29, 2008. Once a detainer has been filed, even though the defendant is produced in federal court pursuant to a writ, the Agreement is applicable. *See Mauro*, 436 U.S. at 361-62. Despite this court's Order that King be detained in federal custody, the government concedes that he was returned to state custody at the Bristol City Jail. Therefore, the court finds that when King was returned to the Bristol City Jail on June 16, he was returned to state custody. *But see United States v. Persinger,* 562 F. Supp. 557, 562 (W.D. Pa. 1982) (magistrate's oral order detaining defendant in federal custody is "self-executing as to prisoner's custody status and its efficacy is unimpaired" by act of Marshals Service failing to designate defendant as a federal prisoner).

The government argues that the Agreement does not apply in this case because King was still being held in the local jail, and, therefore, he had not yet "entered upon a term of imprisonment in a penal or correctional institution of a party State." In support of this argument, the government cites two Sixth Circuit Court of Appeals cases, both of which appear to turn on a finding that a sentenced prisoner being held in a local facility has not "entered upon a term of imprisonment in a penal or correctional institution." *See Jenkins v. United States*, 394 F.3d 407, 413-14 (6th Cir. 2005): *United States v. Taylor*, 173 F.3d 538, 541 (6th Cir. 1999); *see also Crooker v. United States*, 814 F.2d 75, 77-78 (1st Cir. 1987). These cases reason that, since the Agreement is designed to protect against interruption of a prisoner's rehabilitation, it should not be applicable to sentenced prisoners housed in local facilities designed for

temporary custody which often do not offer any type of rehabilitation programs. *See Taylor*, 173 F.3d at 541 (citing *Runck v. State*, 497 N.W.2d 74, 81 (N.D. 1993)).

After reviewing each of these cases, the court is of the opinion that the reasoning used in each is no longer persuasive in light of the Supreme Court's decision in *Alabama v. Bozeman*, 533 U.S. 146 (2001). In *Bozeman* the Supreme Court rejected the argument that a brief transfer of custody should not be a violation of the Agreement because it did not actually interrupt the prisoner's rehabilitation. *See* 533 U.S. at 152-56. Furthermore, the language of the Agreement does not require that the prisoner was housed in a facility that provides some type of rehabilitative program. The language of the Agreement requires only that the prisoner must be serving a term of imprisonment in a "penal or correctional institution." *See* 18 U.S.C.A. App. 2, § 2, Art. III; VA. CODE ANN. §53.1-210, Art. III.

As stated above, the Agreement does not define the term "penal or correctional institution." Under Virginia law, however, the definition of "local correctional facility" includes a jail such as the Bristol City Jail. *See* VA. CODE ANN. § 53.1-1 (2005 Repl. Vol.). Based on this, the court rejects this argument and finds that, at the time the federal detainer was filed against him, King was a state prisoner who had "entered upon a term of imprisonment in a penal or correctional institution of a party State."

That being the case, the court finds that the Marshals Service violated King's rights under the Agreement when, after filing a detainer against King, it temporarily obtained him from state custody and then returned him to state custody before this

court disposed of the charge against him. Having found a violation of the anti-shuttling provisions of the Agreement, it is of no consequence how technical or slight the violation. *See Bozeman*, 533 U.S. at 152-56. Thus, the only issue remaining before the court is whether the dismissal of the charge against King should be with or without prejudice.

King argues that dismissal of the charge should be with prejudice.[1] The court disagrees. For the reasons set forth in this court's August 6, 2008, Report and Recommendation addressing the same issues argued by co-defendant, Travis Dell Jones, Criminal No. 1:08cr00024-051, (Docket Item No. 539), the court is of the opinion that it has the authority to dismiss the charges against King either with or without prejudice. In determining whether to dismiss the Indictment against King with or without prejudice, the court must consider, among others, the factors specifically listed in § 9. King is charged with violating 21 U.S.C. § 846 by conspiring to possess with intent to distribute and to distribute 50 grams or more of crack cocaine and 500 grams or more of cocaine. The offense with which King is charged is serious, in that, if convicted, King faces a mandatory minimum prison sentence of at least 10 years' imprisonment. Also, the Indictment charges that King was involved in a complex, large-scale crack and cocaine distribution conspiracy. According to the facts presented in the affidavit attached to the Criminal Complaint, investigating officers obtained statements from confidential sources and various co-defendants from February 2007 through January 2008 indicating that King was a crack cocaine distributor in the Bristol, Virginia, area. Moreover, in April 2007, a co-defendant,

---

[1]Although the Motion states that "for the foregoing reasons and those set forth in his supporting memorandum," King is asking that the court dismiss the Indictment with prejudice, King has filed no such supporting memorandum with his Motion.

-8-

Valerie Lester, accompanied by an undercover police officer, purchased approximately 1/8 ounce of crack cocaine from King in Bristol, Virginia.

Also, the facts and circumstances of this case show that King was removed from and returned to state custody on the same date. Therefore, any interruption in his state rehabilitative efforts was necessarily brief. While, under *Bozeman*, this may no longer be taken into account in determining whether there has been a violation of the Agreement, it may be considered by the court in determining whether the violation justifies dismissal of the charge with prejudice. *See United States v. Kelley*, 402 F.3d 39, 42 (1st Cir. 2005). It is clear from the face of the court's own detention order that the Marshals Service should have known that King was serving a state court sentence. Therefore, under the terms of the court's order and the Agreement, the Marshals Service should not have returned King to state custody. However, no party has offered any explanation as to how or why this error occurred, including offering no evidence of any improper motive on the part of the Marshals Service. Furthermore, neither party has argued that the reprosecution of King would have any particular impact on the administration of the Agreement or the administration of justice. In particular, King has offered no evidence or argument that he was prejudiced in any way by his return to state custody. That being the case, I recommend that the court dismiss the charge against King without prejudice.

# PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Prior to May 29, 2008, both Virginia and the United States had adopted the Agreement;
2. On May 29, 2008, King was in the custody of the Bristol City Jail serving a Virginia state court sentence;
3. Prior to May 29, 2008, King had "entered upon a term of imprisonment in a penal or correctional institution of a party State" under the Agreement;
4. The Marshals Service filed a detainer against King with the Bristol City Jail on May 29, 2008, based on the Indictment returned on May 28, 2008, charging him with violating 21 U.S.C. § 846;
5. Pursuant to a writ, the Marshals Service took custody of King on June 16, 2008, then returned him later that same day to state custody at the Bristol City Jail;
6. When King was returned to state custody on June 16, 2008, the Indictment remained pending against him in this court;
7. By returning King to state custody on June 16, 2008, the Marshals Service violated King's rights under the "anti-shuttling provision" of the Agreement, requiring dismissal of the charge contained in the Indictment against King in this

> court; and

8. Under the facts and circumstances of this case, the charge contained in the Indictment against King should be dismissed without prejudice.

## RECOMMENDED DISPOSITION

The undersigned recommends that this court grant the Motion and dismiss the charge pending against King without prejudice.

## **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(c):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of

the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 15th day of August 2008.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE